IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ANDRES G.,[1] | ) | Civil No.: 3:17-cv-00597-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

George J. Wall
825 NE 20th Ave. Suite 330
Portland, OR 97232

     Attorney for Plaintiff


Billy J. Williams, Acting U.S. Attorney
Renata Gowie, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Findings and Recommendation uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

FINDINGS AND RECOMMENDATION – 1

Catherine Escobar
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

        Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff brings this action pursuant to 42 U.S.C. 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff requests the Court remand this action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision should be reversed, and this case should be remanded for further proceedings.

### Procedural Background

Plaintiff protectively filed applications for SSI benefits and for a period of disability and DIB on April 13, 2011, alleging that he had been disabled since May 14, 2009.

On August 9, 2013, a hearing was held before an Administrative Law Judge (ALJ). On September 17, 2013, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. On October 29, 2014, the Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner. On November 12, 2014, Plaintiff filed an action in this Court seeking review of the Commissioner's decision. Based upon a stipulated motion by

FINDINGS AND RECOMMENDATION – 2

the parties, U.S. District Court Judge Michael McShane issued an Order and Judgment on October 9, 2015 reversing the Commissioner's decision and remanding for further proceedings.

On August 2, 2016 a hearing was held before ALJ Jo Hoenninger. Supplemental hearings were held on November 8, 2016 and November 10, 2016. Plaintiff; Vocational Experts, Thomas Weiford and Paul Morrison; and medical expert, John M. Dusay, M.D., appeared at the hearings and testimony was taken from Plaintiff, Dr. Dusay and VE Morrison. In a decision dated January 19, 2017, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Plaintiff did not file written exceptions and the Appeals Council did not review the ALJ's decision on its own. Therefore, the ALJ's decision became the final decision of the Commissioner on March 21, 2017. In the present action Plaintiff challenges the January 19, 2017 decision.

## Background

Plaintiff was born in 1967 and was 49 years old at the time of ALJ Hoenninger's decision. Plaintiff has a sixth-grade education, cannot read English, and has past relevant work as a recycling laborer, construction laborer and dishwasher/kitchen helper.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is

FINDINGS AND RECOMMENDATION – 3

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. §§ 404.1520(f),416.920(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-

FINDINGS AND RECOMMENDATION – 4

Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  *Tackett*, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id.*

## ALJ's Decision

As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements through December 31, 2013.

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 14, 2009, the alleged onset date.

At the second step, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, history of a traumatic brain injury, borderline intellectual functioning, status post hand laceration, and major depressive disorder, single episode.

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925, 416.926).

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity (RFC). She found that Plaintiff retained the functional capacity to:

> perform medium work . . . except: he can occasionally handle and finger with the
> non-dominant left upper extremity; he can occasionally reach overhead with the

FINDINGS AND RECOMMENDATION – 5

non-dominant left upper extremity; he can understand and remember simple instructions learned by one-on-one, hands on demonstration; he has sufficient concentration, persistence and pace to complete simple routine tasks for a normal workday and workweek with normal breaks; and he should be in a low-stress work environment defined as work requiring few decisions and having few changes to the work setting.

Tr. 604. In making her determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.

At Step Four of the disability analysis, the ALJ found that Plaintiff was unable to perform any of his past relevant work.

At the fifth step, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited price marker, small products assembler, and charge account clerk as representative of the work Plaintiff could perform. Having concluded that Plaintiff could perform other work, the ALJ found that Plaintiff had not been under a disability within the meaning of the Act from May 14, 2009 through the date of her decision.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and

bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

### Discussion

Plaintiff contends that the ALJ erred in concluding that Plaintiff's impairments did not meet or equal Listing 12.05C, failed to properly reject the opinion of his treating physician, and erred in her Step Five finding that Plaintiff was able to perform other work.

## I. Evaluation at Step Three

The Social Security Regulations' Listing of Impairments is "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885(1990). Conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir.1995).

Plaintiff contends that the ALJ erred in concluding that his impairments did not meet or equal Listing 12.05C, which establishes the criteria for intellectual disability. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2016). The Commissioner asserts that Plaintiff's argument fails because Listing 12.05C was no longer in effect at the time of the ALJ's decision.

On September 26, 2016, the Commissioner published Final Rules that included significant revisions to the Listings criteria used to evaluate claims involving mental disorders. *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01, 2016 WL 5341732(F.R.). The changes included significant revisions to Listing 12.05, including the elimination of Listing 12.05C. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Jan. 17, 2017). The Agency noted that:

> these final rules will be effective on January 17, 2017. We delayed the effective date of the rules to give us time to update our systems, provide training and guidance to all of our adjudicators, and revise our internal forms and notices before we implement the final rules. The prior rules will continue to apply until the effective date of these final rules. When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date.

81 Fed. Reg. 66138-01, 2016 WL 5341732(F.R.). In a footnote, the Agency went on to explain that:

> This means that we will use these final rules on and after their effective date, in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.

*Id*. at n.1.

Notice of the content of the revised regulations and their effective date was issued prior to the November 2016 supplemental hearings before the ALJ during which Plaintiff, a VE and a

FINDINGS AND RECOMMENDATION – 8

Medical Expert testified. The ALJ's decision is dated January 19, 2017. Therefore, pursuant to the language of the regulation, the ALJ should have evaluated Plaintiff's mental impairments and issued her decision based on the new Listings. However, the ALJ did not do so and made no mention of the change in the regulations. This was clear error.

The changes to Listing 12.05 were substantial; the ALJ failed to engage in the proper analysis at Step Three; and Listing 12.05C, upon which the ALJ relied, no longer exists. As a result, the ALJ's decision that Plaintiff did not meet or equal a Listing for Intellectual Disorder is not supported by substantial evidence. The Commissioner's arguments that the ALJ's 12.05C findings reveal that Plaintiff does not meet the requirements of the new 12.05 Listing constitute improper post-hoc rationalizations that this Court cannot consider. *Stout v. Commissioner, Social Sec. Admin*., 454 F.3d 1050, 1054 (9th Cir. 2006) (A reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." (internal citations omitted)). Furthermore, this error was not harmless – evaluation of disability under an inapplicable regulation is not inconsequential to the ultimate nondisability determination. *See Id.* at 1055.

## II. <u>Medical Opinion Evidence</u>

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Lester,* 81 F.3d at 830.

FINDINGS AND RECOMMENDATION – 9

The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Id.* A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's daily activities. *Tommasetti*, 533 F.3d at 1040. An ALJ need not accept a doctor's medical opinion that "is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005) (*citing Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir.2001)).

Plaintiff's treating physician, Richard Gil, M.D., provided a written "Physical Capacity Statement," dated August 7, 2015. Tr. 1378-1383. Dr. Gil wrote that Plaintiff was diagnosed with diabetes, a history of fractures of the vertebrae and humerus, GERD, episodic alcohol abuse, hyperlipidemia, chronic left shoulder pain and traumatic brain injury. Tr. 1378. He opined that Plaintiff had no limits on the amount of time he could stand, walk, or sit during an eight-hour day; was limited to performing all postural activities occasionally except for twisting, which he could do frequently; and reaching overhead, operating foot pedals and balancing, which he should not do at all. He indicated that Plaintiff's grasping with his left hand was decreased. Dr. Gil opined that Plaintiff's traumatic brain injury made it difficult for him to concentrate and that he was incapable of even a low-stress job as stress worsened his memory and concentration. Tr.

FINDINGS AND RECOMMENDATION – 10

1379-1380. Dr. Gil opined that Plaintiff would be unable to perform simple 2 step work tasks for more than two-thirds of the work day. Tr. 1380-1381.

The ALJ gave only "partial weight" to Dr. Gil's opinion, finding that his postural and exertional recommendations were not supported by the record and that

> his opinions on the claimant's traumatic brain injury and inability to perform at even a low stress job or simple two step work tasks are contradictory to the fact the claimant was able to work at a substantial gainful level for several years after sustaining his traumatic brain injury and there is no evidence of any increased symptoms relating to this condition since he stopped working.

Tr. 608.

Plaintiff argues that the ALJ's reasoning was not specific and legitimate or based on substantial evidence in the record. With regards to the postural and exertional limitation, Plaintiff argues that "despite the fact that Plaintiff was not receiving ongoing treatment for his back and neck, Dr. Gil took [the history of fracture of the vertebrae and humerus] into account when considering Plaintiff's limitations." Pl. Brief at 15. With respect to the ALJ's rejection of Dr. Gil's opinion regarding the effects of Plaintiff's traumatic brain injury, Plaintiff argues that he stopped working in 2009, the work he performed was intermittent and low-skilled, and that his 2014 diagnosis of depression makes it "reasonable to assume" that the addition of this diagnosis could increase the symptoms associated with the traumatic brain injury. Pl. Brief at 16.

The Commissioner asserts that the scarcity of evidence in the record indicating complaints of or treatment for Plaintiff's spine supports the ALJ's conclusion that Dr. Gil's postural limitations were entitled to only partial weight. I agree. Numerous records demonstrate that any back or shoulder pain was intermittent and short-term, and that Plaintiff exhibited normal range of motion and strength on examination. See, e.g. Tr. 317, 1159, 1180, 1234-1235, 1319, 1339, 1391. Plaintiff does not dispute that he was not receiving ongoing, specific treatment

FINDINGS AND RECOMMENDATION – 11

for his back and neck. On this record, the ALJ provided a specific, legitimate reason supported by the record for discounting Dr. Gil's opinion regarding Plaintiff's postural and exertional limitations.

With respect to Dr. Gil's opinion regarding the effect of Plaintiff's traumatic brain injury on his ability to handle work stress and perform two-step tasks, the Commissioner argues that the ALJ properly considered that Plaintiff's condition was longstanding and did not interfere with his ability to work. Plaintiff argues that it is reasonable to assume that Dr. Gil's opinion took into account his post-working diagnosis of depression and considered it an aggravating condition which contributed to Plaintiff's limitations. Plaintiff acknowledges that Dr. Gil did not treat Plaintiff for depression. However, he argues that Dr. Gil was privy to chart notes from Plaintiff's mental health provider and referred in his own notes to Plaintiff's treatment for depression by other members of the treatment team.

Plaintiff's argument is unpersuasive. First, Dr. Gil makes no mention at all of depression in his August 7, 2015 opinion statement. His remark in his chart notes concerning the diagnosis by the mental health provider is cursory, and his chart references to Plaintiff's mental health treatment and use of Cymbalta are inconsistent between 2013 and 2015. *See, e.g.* Tr. 1216-127, 1160, 1162-1165, 1327-1330.

Based upon this record, the Court cannot "assume" that Dr. Gil viewed Plaintiff's depression diagnosis as an aggravating factor that he considered and incorporated into his 2015 opinion. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). Here, the ALJ provided a specific and legitimate reason supported by substantial evidence for her treatment of Dr. Gil's opinion that Plaintiff could not perform even two-step tasks or at a low

FINDINGS AND RECOMMENDATION – 12

stress job. *Bayliss*, 427 F.3d at 1216 (claimant's ability to work despite an impairment was substantial evidence supporting ALJ's rejection of medical opinion to the contrary).

### III. <u>The ALJ's Step Five Findings</u>

In addition to challenging the ALJ's Step Three conclusions, Plaintiff contends that the ALJ erred in relying on VE testimony in arriving at her Step Five findings. Plaintiff challenges the ALJ's reliance on VE testimony regarding potential jobs that required a Reasoning Level of Two and his testimony explaining deviations from the Dictionary of Occupational Titles (DOT) concerned with frequency requirements of fingering, handling, and reaching. Plaintiff also asserts it was error for the ALJ to omit from hypotheticals to the VE his need for additional restroom breaks through the course of the work day.

### A. Jobs Requiring Reasoning Level Two

The ALJ found that Plaintiff was limited to understanding and remembering "simple instructions learned by one-on-one, hands on demonstration," and had "sufficient concentration, persistence and pace to complete simple routine tasks." Tr. 604. The ALJ later identified the jobs of price marker (DOT#209.587-034), small products assembler (DOT#706-684-022) and charge account clerk (DOT#205.367-014) as representative of the work Plaintiff could perform. Tr. 611. Plaintiff contends that these three jobs all require a General Education Development Reasoning Level Two or higher and are thus precluded by his RFC limitation to "simple instructions learned by one-on-one, hands on demonstration."

The Commissioner argues that, based on the Ninth Circuit's decision in *Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015), Plaintiff's contention is unfounded. In *Zavalin* the Ninth Circuit held that there is an apparent conflict between the restriction to "simple, repetitive tasks,"

and the demands of Level Three Reasoning. *Id.*at 847. The Commissioner argues that the *Zavalin*

Court also observed that:

> Level 2 Reasoning—applying common sense to carry out detailed but uncomplicated instructions and dealing with problems involving a few variables—seems at least as consistent with Zavalin's limitation as Level 3 Reasoning, if not more so. *See Hackett,* 395 F.3d at 1176 (noting that Level 2 "appears more consistent" than Level 3 for a claimant limited to simple, routine tasks).

*Id.* Thus, according to the Commissioner, Plaintiff has provided no basis for the conclusion that

"an individual able to perform simple working (sic) would be unable to perform unskilled work

that involved, 'detailed but uninvolved' instructions and problems involving 'few variables.'"

Def. Brief at 11.

As an initial matter, even according to the Commissioner's own argument, Plaintiff is

precluded from performing the job of charge account clerk, which requires a Reasoning Level

Three. *See* DOT#205.367-014, 1991 WL 671715 (1991). I also conclude, based on the precedent

established in *Zavalin*, that Plaintiff's RFC precludes performance of the charge account clerk

job.

Decisions within this circuit suggest that an RFC limitation to "simple" or "repetitive"

tasks or instructions is consistent with Level Two Reasoning. *See Rounds v. Comm'r Soc. Sec.*

*Admin.*, 807 F.3d 996, 1004 n.6 (9th Cir. 2015) (noting that "[u]npublished decisions of panels of

this Court and opinions from some of our sister circuits have concluded that an RFC limitation to

'simple' or 'repetitive' tasks is consistent with Level Two reasoning"); *Watkins v. Comm'r Soc.*

*Sec. Admin.*, 2016 WL 4445467, at *7 n.2 (D. Or. Aug. 22, 2016) ("The District of Oregon

repeatedly has held that the limitation to perform simple and routine tasks is not inconsistent

with Reasoning Level 2 jobs."); *Maxwell v. Comm'r Soc. Sec. Admin.*, No. 3:12–cv–00475–HU,

2013 WL 4087758, at *19 (D. Or. Aug. 12, 2013) (finding limitations to "simple, routine

instructions and procedures," and "simple, routine tasks" not inconsistent with Level 2

reasoning); *Patton v. Astrue*, No. 6:11–cv–06423, 2013 WL 705909, at *1 (D. Or. Feb. 25, 2013)

(same). However, the RFC before this court is distinguishable from those dealt with in the above

decisions.

Here, Plaintiff was not only limited to "simple," or "repetitive" or "routine" tasks or

instructions. The RFC specifically stated that the instructions must be both "simple" and "learned

by one-on-one, hands on demonstration." Tr. 707(emphasis added). The Commissioner's

argument that a limitation to "simple work" did not preclude jobs with a Reasoning Level Two

requirement ignores this important distinction and overlooks the actual language of Reasoning

Level Two which is defined as the ability to: "Apply commonsense understanding to carry out

detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete

variables in or from standardized situations." DOT, App. C, §III, 1991 WL 688702(emphasis

added). A "one-on-one, hands on demonstration" of instructions is materially more restrictive

than "detailed but uninvolved written or oral instructions." Thus, this more restrictive limitation

is not consistent with Level Two Reasoning.

The ALJ failed to recognize an apparent conflict between Plaintiff's RFC and the

demands of Level Two Reasoning. The remaining two jobs that the VE identified and the ALJ

cited in her decision require Level Two Reasoning and, thus, are not compatible with Plaintiff's

RFC. As a result, the ALJ's Step Five finding was erroneous and not based on substantial

evidence.

## B. Limitations to Handling, Fingering and Reaching

Plaintiff's RFC includes the limitation that he can "occasionally handle and finger with

the non-dominant, left upper extremity [and] occasionally reach overhead with the non-dominant

left upper extremity." Tr. 603-604.  In a hypothetical posed to the VE, the ALJ included these limitations and the VE responded by identifying the jobs noted above: price marker, small products assembler, and charge account clerk. Tr. 704-705.

Plaintiff asserts that two of these three jobs require "frequent" handling and fingering, the third job requires "frequent" handling and "occasional" fingering, and all three jobs require "frequent" reaching.

When the ALJ asked the VE whether his testimony was consistent with the DOT, the VE acknowledged the discrepancy between the jobs he identified and the manipulative requirements of those jobs in the DOT. The VE explained that the basis for his deviation from the DOT was "[t]hirty years as a rehab counselor, doing on-site job analyses for these jobs." Tr. 706. Plaintiff argues that this explanation is insufficient to justify deviation from the DOT. The Commissioner asserts that under *Bayliss* and *Johnson v. Shalala*, 60 F.3d 1428 (9th Cir. 1995), the VE's explanation was sufficient.

In *Bayliss*, upon considering whether the ALJ erred in relying on VE testimony concerning the number of relevant jobs in the national economy, the court held that a "VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Bayliss,* 427 F.3d 1211 at 1218. In *Johnson*, the Court held that an "ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. The Court found the ALJ's explanation for the deviation satisfactory because the ALJ made findings of fact that supported that deviation. *Id.* at n. 7.

Here, the ALJ relied on the VE's general and cursory response that he had done "on-site job analyses for these jobs."  The VE's thirty years of experience may provide the foundation for

FINDINGS AND RECOMMENDATION – 16

his testimony. However, his indefinite testimony does not constitute persuasive evidence as to why the frequent handling, fingering and reaching requirements of the three jobs identified could be performed by someone limited to "occasional handling and fingering with the non-dominant left upper extremity." *See Tommasetti*, 533 F.3d at 1042 (ALJ's finding erroneous where the "ALJ did not identify what aspect of the VE's experience warranted deviation from the DOT and did not point to any evidence in the record other than the VE's sparse testimony for the deviation."). Thus, the ALJ's Step Five finding that Plaintiff could perform "other work" was not supported by substantial evidence.

## C. Omission of Restroom Break Requirements from the Hypothetical

Plaintiff testified at the November 11, 2016 hearing that he needed to take restroom breaks five to eight times in an eight-hour period. Tr. 697. In her decision, the ALJ acknowledged this testimony but noted that "no diagnoses for these complaints appears in the medical record." Tr. 601.

The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The RFC is the maximum a claimant can do despite his limitations. 20 C.F.R. § 404.1545. The ALJ is required to include only those limitations which are supported by substantial evidence in any hypotheticals posed to a vocational expert. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Here, the ALJ concluded that the restroom breaks Plaintiff testified he needed were not supported by the record. With the exception of asserting that frequent urination is a common symptom of diabetes, Plaintiff has not pointed to any medical evidence in the record establishing the need for this limitation. Here, the ALJ properly excluded the limitation regarding restroom breaks. *See, e.g. Bayliss*, 427 F.3d at 1217-18 (in making an RFC determination, ALJ need only

FINDINGS AND RECOMMENDATION – 17

include those limitations supported by the record and not dependent on a claimant's subjective complaints).

## IV. Remand

Based upon the record, this Court is unable to determine whether Plaintiff is able to perform work existing in significant numbers in the national economy. Furthermore, as noted above, the ALJ's failure to evaluate Plaintiff's disability at Step Three according to the applicable regulations was harmful error and creates a crucial question of whether Plaintiff's impairments are presumptively disabling under the Listings. Accordingly, the record has not been fully developed and remand for further proceedings is appropriate. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

This Court is cognizant of the length of time Plaintiff has pursued his claim and the effects a second remand for further proceedings could have. However, "[l]ong-standing principles of administrative law require [this court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ," *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation omitted); and the agency must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Under the circumstances of this case, the opportunity for meaningful review is unavailable and this case should be remanded for further proceedings.

Upon remand, the Appeals Council should be directed to instruct the ALJ to reevaluate Step Three of the sequential evaluation according the Listings in effect. Furthermore, if the ALJ's analysis advances beyond Step Three, Step Five should be reassessed with the assistance of a vocational expert, if necessary.

FINDINGS AND RECOMMENDATION – 18

**Conclusion**

For the reasons set out above, the Commissioner's decision should be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for FURTHER PROCEEDINGS consistent with this Findings and Recommendation.

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due January 10, 2019. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 27th day of December, 2018.


        /s/ John Jelderks
        John Jelderks
        U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION – 19